OPINION OF THE COURT
Hancock, Jr., J.
We have held that a right of first refusal or preemptive right — as distinguished from an option — does not “give its holder the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the party holding the preemptive right so that he may meet a third-party offer or buy the property at some other price set by a previously stipulated method”. (Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 163.) In this appeal, the determinative question is one that our court has not addressed: whether a contractual *57 right of first refusal, which has been triggered by a contract to sell to a third party, may be exercised during the specified duration of the right but after the third-party transaction has been abandoned. In other words, is an offer, once made to the holder of a right of first refusal, irrevocable for the period of time set forth in the first refusal clause? The Appellate Division concluded that such an offer is not irrevocable and dismissed the proceeding and the action brought by the first refusal offeree. For reasons which follow, we agree with this conclusion and, accordingly, affirm.
I
Following the Federal Communications Commission’s 1981 authorization of cellular telephone service, LIN Broadcasting Corporation and LIN Cellular Communications Corporation (collectively LIN) and Metromedia, Inc. and Metromedia Company (collectively Metromedia) agreed to enter the business jointly in the New York City and Philadelphia markets. The companies formed a partnership, Cellular Telephone Company (CTC), to serve the New York City market and a corporation, AW ACS, Inc., for the Philadelphia area. The parties entered into two contracts — the New York partnership agreement and the Philadelphia stock agreement — which, among other things, gave each party a right of first refusal to buy the other party’s interest before the other party could sell to a third party. In pertinent part, the New York agreement provided:
"§ 7.2
"Right of First Refusal — Third Party Transactions. No Partner shall sell, transfer or otherwise dispose of its Ownership Interest to a third party except * * * after giving the other Partners a right of first refusal to acquire such Ownership Interest as provided in this Section 7.2. Any Partner desiring to transfer its Ownership Interest shall first offer such Ownership Interest to the other Partners, by written notice, at the same price and upon the same terms offered by an Offeror. * * * During a period of 45 days after such written notice is received, each other Partner shall have the exclusive right to purchase its Pro Rata share of such Ownership Interest at the appropriate portion of the cash price and otherwise upon the terms and conditions of the offer”.
The Philadelphia stock agreement contained two clauses, section 7 (c) and section 8, relating to the right of first refusal. Section 7 (c) gave each stockholder a "right of first refusal”
*58 substantially like that contained in section 7.2 of the New York agreement except that the buying stockholder had 60 days to exercise its right. Section 8 provided, in part:
"§ 8
"Consolidation and Sale of Assets. Notwithstanding anything herein to the contrary * * * [t]he right to sell or otherwise transfer the shares specified in this Section 8 shall be subject to a right of first refusal whereby the selling stockholder shall notify the other stockholder in writing that it has received a bona fide offer from the third party to acquire all or substantially all of such assets. The other stockholder shall have ten days within which to request appraisal of the value of the shares. An appraisal committee shall be promptly established * * *. Within thirty days after the receipt of the written appraisal, the other stockholder shall have the right to purchase the shares of the selling stockholder at the Appraised Value”.
On June 30, 1986, Metromedia entered into a contract with Southwestern Bell Corporation (Bell) under which Bell agreed to purchase various assets from Metromedia for a total price of $1.65 billion. Included in the proposed transaction were Metromedia’s interests in the New York and Philadelphia cellular telephone businesses. The contemplated sale was expressly conditioned upon Metromedia’s having obtained "waivers of all rights of first refusal held by third parties”.
Thereafter, in compliance with the two first refusal clauses, Metromedia sent two letters dated July 14, 1986 to LIN advising it of the proposed sale to Bell of its interests in the New York and Philadelphia joint ventures. Metromedia stated that the portion of the total sales price allocable to the New York and Philadelphia interests were $273,510,000 and $94,860,000, respectively, for a total of $368,370,000. Each letter informed LIN of the terms pertaining to the sale of the particular interest and notified it of its rights to purchase under the applicable first refusal clause upon the terms and conditions being offered by Bell.
Following receipt of the July 14 letters, various exchanges took place between LIN and Metromedia concerning questions raised by LIN as to whether the proposed sale to Bell violated other unrelated provisions of the New York and Philadelphia agreements; whether the proposed sale violated the consent decree in United States v American Tel. & Tel. (552 F Supp 131, affd sub nom. Maryland v United States, 460 US 1001); *59 and whether the portion of the total price in the sale contract with Bell allocated to the cellular telephone businesses was inflated. During the course of these communications, LIN and Metromedia agreed to a series of extensions of LIN’s rights under the New York agreement culminating in a final extension giving LIN until September 26, 1986 to exercise its right of first refusal for the New York interests. In addition, in a letter dated July 23, 1986, LIN stated that because Metromedia was selling all of its stock in the Philadelphia business, the applicable provision of the Philadelphia contract was section 8, not section 7 (c), and that it was, therefore, requesting an appraisal.[1]
Subsequently, Metromedia decided to keep its interests in the cellular telephone businesses. After renewed negotiations with Bell, the parties amended their June 30, 1986 agreement deleting these assets, among others, from the sale and reducing the purchase price by $453,000,000. On September 11, 1986, Metromedia notified LIN in two letters that it had decidéd to retain its New York and Philadelphia interests and that the first refusal offers were no longer valid. LIN responded on September 18, 1986 by sending Metromedia notices purporting to exercise its first refusal rights under the New York contract and signifying its intention to proceed with the appraisal process under section 8 of the Philadelphia agreement.
LIN then commenced the instant litigation: a specific performance action to compel Metromedia to sell to LIN its New York interests and a proceeding pursuant to CPLR 7601 to expedite the appraisal of Metromedia’s Philadelphia interests. There is no dispute that the first refusal provisions of these agreements were triggered when Metromedia entered into a binding agreement to sell its interests in the cellular telephone businesses to Bell. Nor is there any question that prior to LIN’s letter of September 18, 1986 purporting to exercise its preemptive rights under the New York agreement and requesting that the appraisal procedures in the Philadelphia agreement go forward, Metromedia and Bell had abandoned their agreement for Bell’s purchase of the cellular telephone interests.
The IAS court denied Metromedia’s motions to dismiss both *60 the specific performance action and the CPLR 7601 proceeding and granted LIN’s petition to require the appraisal under the Philadelphia stock agreement. It held in substance that the first refusal offers could not be validly revoked although the underlying third-party transaction had been abandoned. On appeal the Appellate Division, in a well-reasoned opinion, unanimously reversed, concluding that neither the New York nor Philadelphia agreement contained a provision conferring an irrevocable right to compel a sale, and that, in the absence of such language there "is nothing to prohibit a partner or shareholder from in good faith changing its mind about selling at any time prior to the invocation of the right of first refusal” (139 AD2d 124, 133).
II
The effect of a right of first refusal, also called a preemptive right, is to bind the party who desires to sell not to sell without first giving the other party the opportunity to purchase the property at the price specified (see, R. I. Realty Co. v Terrell, 254 NY 121, 124; Burbach v Sinram, 237 NY 600; Garcia v Callender, 125 NY 307, 312; 1A Corbin, Contracts § 261, at 471 [1963]; 6 American Law of Property § 26.64, at 507 [Casner ed 1952]). Such right of first refusal differs from an option in significant respects. Unlike an option — in essence, an offer which by contract is to be kept open (see, 1 Williston, Contracts § 61A [3d ed]; Restatement [Second] of Contracts § 25; 1 Corbin, Contracts § 43 [1963]) — a right of first refusal does not, at the time it is given, include an operative offer. Rather, it is a restriction on the power of one party to sell without first making an offer of purchase to the other party upon the happening of a contingency: the owner’s decision to sell to a third party. Under a right of first refusal, the only offer involved is one to be made in the future, if and when the owner reaches agreement with a third-party purchaser. Also, unlike an option — which creates in the optionee a power to compel an unwilling seller to sell at the agreed price — a right of first refusal contemplates a willing seller who desires to part with the property (see, Metropolitan Transp. Auth. v Bruken Realty Corp., supra, at 163; R. I. Realty Co. v Terrell, supra, at 124). In sum, a right of first refusal merely provides that before an owner sells, it will first give the other party a chance to buy (1A Corbin, Contracts § 261, at 474 [1963]).
*61 Before discussing whether a right of first refusal, once triggered, becomes a binding option, two points must be briefly addressed. First, we observe, as did the Appellate Division, that neither the New York nor the Philadelphia agreement purported to bestow an irrevocable right to compel a sale (139 AD2d, at 133). Indeed, no wording in either agreement can be construed as giving LIN anything more than a standard right of first refusal. Both the caption of section 7.2 of the New York agreement and the text of the provision refer to the right being granted to the nonselling partner as a "Right[ ] of First Refusal”. Similarly, section 7 (c) and section 8 of the Philadelphia agreement describe the right conferred on a nonselling stockholder as a "right of first refusal”. Moreover, neither of Metromedia’s letters of July 14 notifying LIN of the proposed sale to Bell can be read as granting to LIN any rights other than what it already had by virtue of the first refusal clauses. The first refusal offers made in these letters to LIN are not by their terms irrevocable.
Second, we reject the contention that LIN’s request for an appraisal of Metromedia’s AW ACS stock under section 8 of the Philadelphia agreement constituted an acceptance of Metromedia’s first refusal offer contained in the July 14, 1986 letter. The appraisal process under section 8 serves only as the mechanism for supplying the term essential for the exercise of the first refusal right, the price at which the nonselling stockholder may buy. Instead of accepting the offer at the price and on the terms of the third-party transaction (as in § 7.2 of the New York agreement and § 7 [c] of the Philadelphia agreement), a nonselling stockholder which has requested an appraisal under section 8 has the right, within 30 days, to purchase the shares of the selling stockholder at the appraised value. The nonselling stockholder, however, is not bound to purchase. Once the appraisal is received, its rights to accept or reject the purchase at the appraised value are no different from those of any first refusal offeree.[2]
*62 Ill
We turn then to the general proposition of law that LIN would have us adopt as the rule in this State: that a first refusal offer, once made, is irrevocable for the period specified in the first refusal clause. In effect, LIN argues that a right of first refusal constitutes a conditional option. The right is transformed into a binding option, LIN says, when the event triggering the first refusal rights takes place. We do not believe that such rule comports with general principles of contract law or with the theory of first refusal rights.
The obvious effect of the right of first refusal is to give to the nonselling party a power to control and restrict the other party’s right to sell to a third party. The clause itself operates as a restriction by preventing a party from making a sale without first making the first refusal offer. When, as here, the selling party has fully complied with its obligations under the first refusal clause by not selling without first making the required offer, the nonselling party has received the bargained-for performance. The intended effect of the clause as a means of restricting or preventing a sale to a third party has been realized. There is no basis for requiring the selling party to render more than its promised performance, as LIN would have us do, by keeping the offer open for the period specified in the first refusal clause, thus giving the first refusal offer all of the attributes of an option (see, 1 Williston, Contracts § 61A, at 198 [3d ed 1957]).
The distinctions between a right of first refusal and an option have been thoroughly defined in the treatises and in the decisions of this State (see, discussion, supra, at 60), and there is nothing to prevent the contracting parties, if they choose, from simply agreeing on a provision that a first refusal offer, once made, must remain open for a specified time, making it an option. Moreover, to read into a right of first refusal such an unspecified additional provision would be contrary to the general rule at common law that an offer may be withdrawn at any time before it is accepted (see, 1 Williston, Contracts § 55, at 176 [3d ed]; Restatement [Second] of Contracts § 42).
LIN argues, however, that — notwithstanding the lack of an irrevocability provision — the law should require that the first refusal offer be kept open for acceptance even after the contemplated third-party sale has been abandoned. It maintains that the Appellate Division, in deciding to the contrary, *63 mistakenly presupposed that the primary purpose of a right of first refusal is to restrict third-party sales. The true purpose, LIN contends, is "to enable the right holder to eventually purchase the property”, a purpose which is frustrated if the offer may be withdrawn before acceptance. While there is authority to the effect that the primary purpose of an option "is to enable a particular person to buy, not to prevent anyone from selling” (Simes & Smith, Future Interests, at 1154 [2d ed 1956]), we have found none for the proposition that this is the intended purpose of a first refusal right.
The construction of the right of first refusal proposed by LIN would clearly impose substantial risks and disadvantages on the party contemplating a sale. The act of making a first refusal offer would carry with it the risk of ultimate loss of the property even though the offeror later changes its mind and decides to keep the property after renouncing the third-party sale. With the benefit of what has become an option, the offeree could wait until the end of the option period and buy if the first refusal price is advantageous, or decline to buy if the property has declined in value and the offered price is no longer attractive. The risks of changes in market price would fall entirely on the first refusal offeror. The offeree would have no risk.
We see no reason why — when, as here, the offeree has received the bargained-for effect of the first refusal clause and the third-party sale has been abandoned — the first refusal offeree should have the substantial additional advantage of holding the offeror’s property subject to the risk of an irrevocable option for the remainder of the stipulated period. When the parties themselves have not agreed on this allocation of risks and benefits in their agreement, the law should not impose it on them.
The relevant case law from other jurisdictions supports the proposition that a first refusal offer is not irrevocable (see, Anderson v Stewart, 149 Neb 660, 668, 32 NW2d 140, 144-145 [1948] [offeror under right of first refusal not obligated to keep offer open for "any definite length of time but could withdraw at any time she desired provided it had not been unconditionally accepted”]; see also, Leb v Hoover, 1982 WL 5637 [No. 5717, Ct App Ohio, Dec. 28, 1982] [since the first refusal right "is dependent upon the seller’s intent to sell he may, as with offers in general, revoke that intent, and therefore the offer, at any time prior to acceptance thereof’, citing Anderson v *64 Stewart, supra]; cf., Long v Wayble, 48 Ore App 851, 618 P2d 22, 25 [1980]).
We do not find Henderson v Nitchke (470 SW2d 410 [Tex Ct Civ App 1971]), relied on by LIN, to be persuasive authority for the proposition that a first refusal offer should be irrevocable. The Henderson court found it significant that the first refusal right in suit specified a 60-day period during which the offer could be accepted. For this reason, it distinguished Anderson v Stewart (supra) where the first refusal offer was open-ended. In our view, however, that a first refusal clause contains a specific time limitation has no bearing on whether it should be given the effect of a binding option. Such time limit merely provides a definite date beyond which the first refusal offer, if still outstanding, may no longer be accepted so that the parties may know when they are free to go forward with the contemplated third-party sale. Moreover, Vorpe v Key Is. (374 So 2d 1035 [Fla Dist Ct App 1979]), on which LIN also relies, is not in point, since in that case the first-party offeree had committed itself to match the third-party offer before that sale was rescinded by court order.
We reject LIN’s contention that Friedman v Sommer (63 NY2d 788) is in some way inconsistent with the conclusion that a first refusal offer should not be irrevocable. There, we simply held that an offer made to a tenant in a cooperative conversion contained no "assurance that it [would] be held open” so as to make it irrevocable under UCC 2-205. The fact that the offer was, by its terms, "non-exclusive” was merely an additional indication that it was not irrevocable. Nothing in Friedman supports the proposition for which LIN apparently cites it: that because an offer is exclusive it follows that it is also irrevocable. That an offeree is the only person who can accept an offer while it is open does not mean that the offer cannot be withdrawn before it is accepted.
Nor is anything in Quigley v Capolongo (53 AD2d 714, affd on mem 43 NY2d 748) to the contrary. In Quigley, after the proposed third-party sale was withdrawn, the owners and the third-party purchaser disguised the sale as a five-year lease with an option to purchase for the obvious purpose of defeating plaintiffs’ right of first refusal. The Appellate Division in granting specific performance to plaintiffs, did "not feel it necessary to decide” what the outcome would have been if the *65 prior third-party sale had been canceled "in good faith” prior to acceptance of the first refusal offer (53 AD2d, at 715).[3]
Because Metromedia’s first refusal offers were withdrawn before acceptance, the Appellate Division properly dismissed LIN’s complaint and petition. Accordingly, the order should be affirmed, with costs.
Judges Simons, Kaye, Alexander, Titone and Bellacosa concur; Chief Judge Wachtler taking no part.
Order affirmed, with costs.

. Although the parties initially disagreed over whether section 7 (c) or section 8 of the Philadelphia agreement controlled, both sides now concede that only section 8 applies to the transaction.

. LIN’s reliance on Turner v Shirk (49 Ill App 3d 764, 364 NE2d 622) for the proposition that a demand to proceed to arbitration renders a right of refusal irrevocable is misplaced for two reasons. First, the Turner court specifically stated that the purchaser was exercising a conditional option not a right of first refusal (see, id., at 624-625). Inasmuch as conditional options are different from rights of first refusal (see, infra, at 62), the case provides no support for LIN’s proposition. Second, the buyer in Turner, unlike LIN, had accepted the offer before it was revoked by committing himself to purchase at the appraised price (see, id., at 623).

. LIN also argues, relying on Quigley v Capolongo (53 AD2d 714) that its action and proceeding should not have been dismissed because there is a factual dispute as to whether Metromedia acted in bad faith to prevent LIN from exercising its rights of first refusal. LIN failed to raise this contention in its petition, in its complaint, or in the affidavits in opposition to the motions to dismiss. Accordingly, it is not preserved for our review.