**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:        Justices:
Clifford W. Taylor    Michael F. Cavanagh
                      Elizabeth A. Weaver
                      Marilyn Kelly
                      Maura D. Corrigan
                      Robert P. Young, Jr.
                      Stephen J. Markman

FILED MARCH 19, 2008

In re EGBERT R SMITH TRUST
_____

GLEN PHILLIPS and DALE PHILLIPS,

      Petitioners-Appellees,

v                                   No. 133462

BETTY HOMER, Successor Trustee,

      Respondent-Appellant.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

We granted leave to appeal to consider whether a right of first refusal is revocable once the holder of the right receives notice of a third party's offer and whether the petitioners-tenants are entitled to summary disposition and specific performance of the right of first refusal.

We affirm the judgment of the Court of Appeals and hold that, under the lease agreement in this case, the petitioners had an irrevocable option to buy the leased property after the respondent presented to the petitioners a bona fide purchase offer from a third party (giving the petitioners the right of first refusal)

and that the respondent breached the lease agreement by failing to honor the option. Furthermore, because real property is unique, and the petitioners timely exercised their option to purchase the property, specific performance is the proper remedy in this case.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of a residential lease agreement for a 75-acre tract of land between the respondent-successor trustee and the petitioners-tenants. In the early 1980s, Egbert Smith died owning a 75-acre tract of farmland. By the terms of his will, the property became an asset of Smith's testamentary trust. In May 1982, Donna Sutton qualified as the trustee of Smith's trust.

As trustee, Sutton entered into a lease agreement with Glen and Dale Phillips, the petitioners. The lease was for a period of five years, with an option to renew under the same terms for an additional five years. The petitioners timely renewed the lease for a second term. On March 27, 2001, the petitioners and Sutton executed an additional five-year extension of the lease. As extended, the lease was to expire by its terms in 2005.

Paragraph 15 of the lease contained the following right of first refusal:

Landlord hereby grants to Tenant the option to purchase the leased premises upon the following terms:

Tenant shall have the right of first refusal to match any bona fida [sic] offer to purchase made with regard to the subject property. In the event Tenant fails to exercise his option within 30 days

2

following presentment of said bona fida [sic] offer to purchase the option herein granted shall terminate.

This option to purchase shall continue through the primary term of this lease and any extensions thereof. Upon Tenant notifying Landlord in writing of his intent to exercise his option to purchase closing for said purchase shall be scheduled at a reasonable time mutually agreeable to the parties.

Upon Tenant's exercising his offer to purchase, Tenant shall pay to Landlord in cash the purchase price less the deposit herein specified and less any and all rental payments made during the lease term.

The respondent, Betty Homer, was appointed successor trustee of the Egbert R. Smith Trust in 2001. In 2004, the respondent received an offer to purchase the property for $225,000. She asserts that she never accepted the offer. However, on July 28, 2004, the respondent's attorney sent a letter to the petitioners stating in pertinent part:

Pursuant to the Lease, it is required that you have the right to match any bona fide offer presented. This letter is to inform you that Ms. Homer has a signed purchase agreement with the offer of $225,000 for the farm. You must notify our office of your decision to exercise your option within 30 days. The thirty days will expire on August 30, 2004. Your offer will be referred to Ms. Homer for her review and final decision. Upon the expiration of that time period, Ms. Homer will be selling the farm.

On August 9, 2004, the respondent's counsel wrote to the petitioners stating that Ms. Homer had declined the original offer and was not selling the farm at that time.

On August 13, 2004, within the 30-day period set forth in the lease and the July 24, 2004, letter, but after the August 9, 2004, letter informing the petitioners

3

that the offer to sell had been rejected, the petitioners gave written notice that they were exercising their option to purchase the property.

The respondent refused to sell the property to the petitioners. The petitioners filed a petition in the Sanilac County Probate Court, seeking to compel the sale of the land pursuant to the lease agreement. The probate court heard oral argument on the parties' cross-motions for summary disposition on December 16, 2005, and granted the respondent's motion for summary disposition. The probate court ruled that the respondent's July 28, 2004, letter triggered the petitioners' opportunity to exercise their option to purchase the property. However, the court determined that the respondent's August 9, 2004, letter had countermanded the July 28 notice before the petitioners exercised their right of first refusal and therefore precluded the petitioners from exercising their right of first refusal. As a result, the probate court held that no enforceable agreement existed. The probate court entered an order to that effect on January 12, 2006.

The petitioners appealed. On February 15, 2007, the Court of Appeals issued an opinion reversing the judgment of the probate court.[1] The Court of Appeals reasoned that after petitioners received notice of the original offer on the property from the respondent, the right of first refusal became an option contract that was not revocable by the respondent during the 30-day period specified in the lease.

---

[1] *In re Egbert R Smith Trust*, 274 Mich App 283; 731 NW2d 810 (2007).

4

The respondent filed an application for leave to appeal in this Court. This Court granted leave to appeal and ordered the parties to brief, among other issues, (1) whether a right of first refusal is revocable once the holder of the right receives notice of a third party's offer and (2) whether the petitioners are entitled to summary disposition and specific performance of the right of first refusal.[2]

## II. STANDARD OF REVIEW

This Court reviews de novo rulings on summary disposition motions, viewing the evidence in the light most favorable to the nonmoving party.[3] Additionally, this case involves an issue concerning the proper interpretation of contracts, which is a question of law that is subject to review de novo by this Court.[4]

## III. ANALYSIS

The resolution of this case involves interpretation of the contractual lease agreement between the petitioners and the respondent. In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the

---

[2] *In re Smith Trust* (*Phillips v Homer*), 479 Mich 853 (2007).
[3] *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006).
[4] *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002).

language of the contract according to its plain and ordinary meaning.[5]  If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law.[6]  However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties.[7]

In this case, the plain language of the parties' lease agreement characterized the petitioners' right of first refusal as an option.  The lease agreement stated:

> Landlord hereby grants to Tenant *the option to purchase* the leased premises upon the following terms:
>
> Tenant shall have the *right of first refusal* to match any bona fida [sic] offer to purchase made with regard to the subject property.  In the event Tenant *fails to exercise his option* within 30 days following presentment of said bona fida [sic] offer to purchase the option herein granted shall terminate.
>
> *This option to purchase* shall continue through the primary term of this lease and any extensions thereof.  Upon Tenant notifying Landlord in writing of *his intent to exercise his option* to purchase closing for said purchase shall be scheduled at a reasonable time mutually agreeable to the parties.
>
> Upon Tenant's exercising his offer to purchase, Tenant shall pay to Landlord in cash the purchase price less the deposit herein specified and less any and all rental payments made during the lease term.  [Emphasis added.]

---

[5] *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 112; 595 NW2d 832 (1999).

[6] *Id.* at 111.

[7] *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965).

This section of the lease agreement expressly granted the petitioners an option to purchase the leased premises in the event that the respondent decided to sell the land. The plain language of the lease agreement demonstrates that the parties intended that when a third party made a bona fide offer to purchase the property and the respondent presented the offer to the petitioners, the petitioners had the irrevocable option to purchase the property for the purchase price within 30 days of the notice.

"An option is basically an agreement by which the owner of the property agrees with another that he shall have a right to buy the property at a fixed price within a specified time."[8] As stated in 17 CJS, Contracts, § 55, p 502:

> An option contract is an enforceable promise not to revoke an offer. It is a continuing offer or agreement to keep an offer open and irrevocable for a specified period. It is a contract right, and the optionor must keep the offer open. Until an option is exercised, the optionor has the duty not to revoke the offer during the life of the option.

An option is an enforceable promise not to revoke an offer for a specified time, in this case 30 days.

The respondent's July 28, 2004, letter triggered the petitioners' right to exercise their option under the lease agreement to purchase the property. The letter expressly stated that the respondent had received a bona fide offer for the

---

[8] *Oshtemo Twp v City of Kalamazoo*, 77 Mich App 33, 37; 257 NW2d 260 (1977).

property and would be selling the property at the expiration of the petitioners' option period. Furthermore, the letter informed the petitioners that they "must notify [the office of the respondent's attorney] of your decision to exercise your option within 30 days" and that the "thirty days will expire on August 30, 2004."

Once the respondent notified the petitioners of a third party's offer to purchase the property, the option in the lease agreement became operative. As a result, the respondent did not have the right to revoke her offer to sell the property to petitioners until after the option period expired on August 30, 2004. Respondent's argument that her July 28, 2004, letter was nothing more than an offer to sell that could be withdrawn at any time before acceptance is incorrect.

Given that the respondent breached the lease agreement by not honoring the petitioners' option, we next consider the appropriate remedy for the breach. Land is presumed to have a unique and peculiar value, and contracts involving the sale of land are generally subject to specific performance.[9] In this case, the petitioners seek specific performance of their option to purchase the property after the respondent claimed to have revoked her tender of the third-party offer after she rejected it. However, since the respondent could not revoke the option in the lease once she presented the bona fide offer to the petitioners, the respondent was contractually obligated to schedule a closing date to convey the property to the

---

[9] *Kent v Bell*, 374 Mich 646, 651; 132 NW2d 601 (1965).

petitioners. Because real property is unique, and the petitioners timely exercised their option to purchase the property, specific performance is the proper remedy.


## IV. CONCLUSION

We conclude that, under the lease agreement, the petitioners had an irrevocable option to buy the leased property after the respondent presented to the petitioners a bona fide purchase offer from a third party and that the respondent breached the lease agreement by failing to honor the option. Furthermore, since real property is unique, and the petitioners timely exercised their option to purchase the property, specific performance is the proper remedy in this case. Accordingly, we affirm the Court of Appeals judgment.


Elizabeth A. Weaver
Clifford W. Taylor
Michael F. Cavanagh
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

9

In re EGBERT R SMITH TRUST

---

GLEN PHILLIPS and DALE PHILLIPS,

      Petitioners-Appellees,

v                                          No. 133462

BETTY HOMER, Successor Trustee,

      Respondent-Appellant.

---

CORRIGAN, J. (*concurring*).

I concur in the majority's result on the basis of the language of the parties' lease agreement. The agreement characterizes petitioners' right to purchase as an "option" that would be triggered by a notice from respondent that she had received a bona fide third-party offer to buy the property. Therefore, the lower courts did not err in holding that the right became an irrevocable option to buy once respondent notified petitioners that she intended to accept a third party's offer. I write separately to clarify that a right of first refusal does not always become an irrevocable option once triggered by a third-party offer. Rather, in any given case, the contract terms establishing a right of first refusal will control whether the right either becomes an irrevocable option once triggered or, instead, may be revoked by the owner if he in good faith changes his mind—and withdraws his offer to sell—before the right is exercised.

This Court has long recognized that rights of first refusal and options to purchase are governed by the contract terms established by the parties.[1] Therefore, as the majority observes, *ante* at 5-6, the plain language of the contract determines the nature of those rights in a given case.[2]   Accordingly, the Court of Appeals erred to the extent that it relied on a general proposition that, when an owner notifies the holder of a right of first refusal of a third party's bona fide offer to purchase, the right of first refusal *automatically* "transmute[s]" into an irrevocable option.  *In re Egbert R Smith Trust,* 274 Mich App 283, 287-288; 731 NW2d 810 (2007), citing 17 CJS, Contracts, § 56, p 503.

Generally, the owner's willingness to sell *to anyone* is a condition precedent that must be present for a right of first refusal to mature into a present option to buy.   17 CJS, Contracts, § 56, p 503 ("A right of first refusal is a conditional option which is dependent upon the decision to sell the property by its owner.").[3]  Parties *may* agree that, if the owner notifies the holder of the right of

---

[1] See, e.g, *Ridinger v Ryskamp,* 369 Mich 15; 118 NW2d 689 (1962); *LeBaron Homes, Inc v Pontiac Housing Fund, Inc,* 319 Mich 310, 313; 29 NW2d 704 (1947).

[2] *Quality Products & Concepts Co v Nagel Precision, Inc,* 469 Mich 362, 375; 666 NW2d 251 (2003).

[3] See also *Miller v LeSea Broadcasting, Inc,* 87 F3d 224, 226 (CA 7, 1996) ("All [a right of first refusal] entitles the holder to do is to match an offer from a third party should the grantor of the option be minded to accept that offer."); *Chapman v Mut Life Ins Co of New York,* 800 P2d 1147, 1150 (Wyo, 1990) ("[W]hen the condition precedent of the owner's intention to sell is met the right of first refusal 'ripens' into an option . . . ."); *Riley v Campeau Homes (Texas),*
(continued…)

2

the owner's intention to accept a bona fide purchase offer, the right matures into an option to purchase that the owner may not revoke during the acceptance period. But a right of first refusal does not automatically grant the holder of the right the power to force a sale if the owner in good faith removes the condition precedent by deciding not to sell at all. As stated in 17 CJS, Contracts, § 63, p 520: "A right of first refusal does not create an irrevocable right to purchase which survives after a proposed third-party transaction has been abandoned."[4]

---

(…continued)
*Inc,* 808 SW2d 184, 187 (Tex App, 1991) ("[A] right of first refusal does not give the lessee the power to compel an unwilling owner to sell.").

[4] 17 CJS, Contracts, § 63, p 520 n 58 cites *Lin Broadcasting Corp v Metromedia, Inc,* 139 AD2d 124, 133; 531 NYS2d 514 (1988), aff'd 74 NY2d 54 (1989), which stated that "unless the language of the applicable contractual provisions state otherwise by expressly creating an irrevocable right, there is nothing to prohibit [an owner] from in good faith changing [his] mind about selling at any time prior to the invocation of the right of first refusal." The opinion of the New York Court of Appeals affirming *Lin Broadcasting* also helpfully observed that

> there is nothing to prevent the contracting parties, if they choose, from simply agreeing on a provision that a first refusal offer, once made, must remain open for a specified time, making it an option. Moreover, to read into a right of first refusal such an unspecified additional provision would be contrary to the general rule at common law that an offer may be withdrawn at any time before it is accepted. [*Lin Broadcasting Corp v Metromedia, Inc,* 74 NY2d 54, 62; 544 NYS2d 316; 542 NE2d 629 (1989) (citation omitted).]

Here, petitioners and respondent generally agree that *Lin Broadcasting* and similar authorities conflict with cases like *Henderson v Nitschke,* 470 SW2d 410 (Tex Civ App, 1971), on which the Court of Appeals relied. *Smith Trust,* 274 Mich App at 289-290. I find *Henderson* unpersuasive to the extent that it, like the Court of Appeals in this case, relied on a general proposition that, once an owner decides to sell, a right of first refusal automatically becomes an irrevocable option that

(continued…)

3

In sum, the terms of the parties' contract will govern whether, when an owner expresses his intent to accept a third party's bona fide offer, a right of first refusal becomes an irrevocable option that allows the holder of the right to force a sale during the contractual acceptance period *even if* the owner in good faith changes his mind and decides not to sell the property to anyone. I encourage parties to explicitly establish in the terms of their contracts whether such an irrevocable option is created or, instead, whether the owner may withdraw his

---

(…continued)

prevents the owner from changing his mind. *Henderson,* 470 SW2d at 412-413. Otherwise, *Henderson* and *Lin Broadcasting* are distinguishable on the basis of their facts. In *Henderson,* as here, the contract referred to the lessee's right to exercise an "option" after the owner notified the lessee of its intent to accept a third party's offer. *Id.* at 411. In *Lin Broadcasting,* to the contrary, the right of first refusal was premised on the owner's continuing desire to sell. *Lin Broadcasting,* 139 AD2d at 132-134.

Further, cases commonly cited for the general proposition that a seller may not revoke a right to purchase after that right has matured into an option do not involve a seller's decision to simply retain his own property, as in *Henderson* and *Lin Broadcasting*. Rather, these cases most often address (1) sales made to a third party without ever notifying the holder of the right of first refusal or (2) an owner's attempt to cancel a sale to the holder of the right *after* the holder exercised his option without the seller having attempted to withdraw his offer before the holder did so. See, e.g., cases cited in 17 CJS, Contracts, § 56, p 503 nn 88 and 89, for the (overbroad) proposition that "[o]nce the holder of a right of first refusal receives notice of a third party's offer, the right of first refusal is transmuted into an option": *Miller,* 87 F3d at 226-227 (addressing how precisely the holder of the right of first refusal must match the third party's offer in order to exercise his option and prevent a sale to the third party); *Hyperbaric Oxygen Therapy Sys, Inc v St Joseph Med Ctr of Fort Wayne, Inc,* 683 NE2d 243, 251 (Ind App, 1997) (holding that, once the holder of the right of first refusal fulfilled the contractual requirements to exercise his option, the seller could not impose additional requirements in order to justify the sale to the third party that it preferred).

4

offer to sell at any time before the holder of a right of first refusal exercises that right to purchase.

Maura D. Corrigan