Corrigan, J.
{concurring). I concur in the majority’s result on the basis of the language of the parties’ lease agreement. The agreement characterizes petitioners’ right to purchase as an “option” that would be triggered by a notice from respondent that she had received a bona fide third-party offer to buy the property. Therefore, the lower courts did not err in holding that the right became an irrevocable option to buy once respondent notified petitioners that she intended to accept a third party’s offer. I write separately to clarify that a right of first refusal does not always become an irrevocable option once triggered by a third-party offer. Rather, in any given case, the contract terms establish *28 ing a right of first refusal will control whether the right either becomes an irrevocable option once triggered or, instead, may be revoked by the owner if he in good faith changes his mind — and withdraws his offer to sell— before the right is exercised.
This Court has long recognized that rights of first refusal and options to purchase are governed by the contract terms established by the parties.[1] Therefore, as the majority observes, ante at 24, the plain language of the contract determines the nature of those rights in a given case.[2] Accordingly, the Court of Appeals erred to the extent that it relied on a general proposition that, when an owner notifies the holder of a right of first refusal of a third party’s bona fide offer to purchase, the right of first refusal automatically “transmutéis]” into an irrevocable option. In re Egbert R Smith Trust, 274 Mich App 283, 287-288; 731 NW2d 810 (2007), citing 17 CJS, Contracts, § 56, p 503.
Generally, the owner’s willingness to sell to anyone is a condition precedent that must be present for a right of first refusal to mature into a present option to buy. 17 CJS, Contracts, § 56, p 503 (“A right of first refusal is a conditional option which is dependent upon the decision to sell the property by its owner.”).[3] Parties may agree that, if the owner notifies the holder of the right of the *29 owner’s intention to accept a bona fide purchase offer, the right matures into an option to purchase that the owner may not revoke during the acceptance period. But a right of first refusal does not automatically grant the holder of the right the power to force a sale if the owner in good faith removes the condition precedent by deciding not to sell at all. As stated in 17 CJS, Contracts, § 63, p 520: “A right of first refusal does not create an irrevocable right to purchase which survives after a proposed third-party transaction has been abandoned.”[4]
*30 In sum, the terms of the parties’ contract will govern whether, when an owner expresses his intent to accept a third party’s bona fide offer, a right of first refusal becomes an irrevocable option that allows the holder of the right to force a sale during the contractual acceptance period even if the owner in good faith changes his mind and decides not to sell the property to anyone. I encourage parties to explicitly establish in the terms of their contracts whether such an irrevocable option is created or, instead, whether the owner may withdraw his offer to sell at any time before the holder of a right of first refusal exercises that right to purchase.

 See, e.g., Ridinger v Ryskamp, 369 Mich 15; 118 NW2d 689 (1962); LeBaron Homes, Inc v Pontiac Housing Fund, Inc, 319 Mich 310, 313; 29 NW2d 704 (1947).

 Quality Products & Concepts Co v Nagel Precision, Inc, 469 Mich 362, 375; 666 NW2d 251 (2003).

 See also Miller v LeSea Broadcasting, Inc, 87 F3d 224, 226 (CA 7, 1996) (“All [a right of first refusal] entitles the holder to do is to match an offer from a third party should the grantor of the option be minded to accept that offer.”); Chapman v Mut Life Ins Co of New York, 800 P2d 1147, 1150 (Wyo, 1990) (“[W]hen the condition precedent of the owner’s intention to sell is met the right of first refusal ‘ripens’ into an option . ...”); Riley v Campeau Homes (Texas), Inc, 808 SW2d 184, 187 *29 (Tex App, 1991) (“[A] right of first refusal does not give the lessee the power to compel an unwilling owner to sell.”).

 17 CJS, Contracts, § 63, p 520 n 58, cited Lin Broadcasting Corp v Metromedia, Inc, 139 AD2d 124, 133; 531 NYS2d 514 (1988), aff'd 74 NY2d 54 (1989), which stated that “unless the language of the applicable contractual provisions state otherwise by expressly creating an irrevocable right, there is nothing to prohibit [an owner] from in good faith changing [his] mind about selling at any time prior to the invocation of the right of first refusal.” The opinion of the New York Court of Appeals affirming Lin Broadcasting also helpfully observed that
there is nothing to prevent the contracting parties, if they choose, from simply agreeing on a provision that a first refusal offer, once made, must remain open for a specified time, making it an option. Moreover, to read into a right of first refusal such an unspecified additional provision would be contrary to the general rule at common law that an offer may be withdrawn at any time before it is accepted. [Lin Broadcasting Corp v Metromedia, Inc, 74 NY2d 54, 62; 544 NYS2d 316; 542 NE2d 629 (1989) (citation omitted).]
Here, petitioners and respondent generally agree that Lin Broadcasting and similar authorities conflict with cases like Henderson v Nitschke, 470 SW2d 410 (Tex Civ App, 1971), on which the Court of Appeals relied. Smith Trust, 274 Mich App at 289-290.1 find Henderson unpersuasive to the extent that it, like the Court of Appeals in this case, relied on a general proposition that, once an owner decides to sell, a right of first refusal automatically becomes an irrevocable option that prevents the owner from changing his mind. Henderson, 470 SW2d at 412-413. Otherwise, Henderson and Lin Broadcasting are distinguishable on the *30 basis of their facts. In Henderson, as here, the contract referred to the lessee’s right to exercise an “option” after the owner notified the lessee of its intent to accept a third party’s offer. Id, at 411. In Lin Broadcasting, to the contrary, the right of first refusal was premised on the owner’s continuing desire to sell. Lin Broadcasting, 139 AD2d at 132-134.
Further, cases commonly cited for the general proposition that a seller may not revoke a right to purchase after that right has matured into an option do not involve a seller’s decision to simply retain his own property, as in Henderson and Lin Broadcasting. Rather, these cases most often address (1) sales made to a third party without ever notifying the holder of the right of first refusal or (2) an owner’s attempt to cancel a sale to the holder of the right after the holder exercised his option without the seller having attempted to withdraw his offer before the holder did so. See, e.g., cases cited in 17 CJS, Contracts, § 56, p 503 nn 88 and 89, for the (overbroad) proposition that “[o]nce the holder of a right of first refusal receives notice of a third party’s offer, the right of first refusal is transmuted into an option”; Miller, 87 F3d at 226-227 (addressing how precisely the holder of the right of first refusal must match the third party’s offer in order to exercise his option and prevent a sale to the third party); Hyperbaric Oxygen Therapy Sys, Inc v St Joseph Med Ctr of Fort Wayne, Inc, 683 NE2d 243, 251 (Ind App, 1997) (holding that, once the holder of the right of first refusal fulfilled the contractual requirements to exercise his option, the seller could not impose additional requirements in order to justify the sale to the third party that it preferred).