# STATE OF MICHIGAN

# COURT OF APPEALS

KEN HOLDINGS, LLC,

        Plaintiff-Appellant,

v

AUTO-OWNERS INSURANCE COMPANY,
MICHAEL J. KAPTURE, and AMERICA ONE
KAPTURE INSURANCE AGENCY, INC., also
known as KAPTURE INSURANCE AGENCY,
INC.,

        Defendants-Appellees.

UNPUBLISHED
November 1, 2016

No. 325427
Genesee Circuit Court
LC No. 11-095991-CK

Before: METER, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

This insurance coverage case is before us for the second time. We again reverse, and we remand for entry of summary disposition in favor of plaintiff KEN Holdings as to coverage and for further proceedings as to damages.

## FACTS AND PROCEDURAL HISTORY

KEN Holdings owned the subject commercial property and in 2006 sold it to HCSL under a contract for deed. The contract provided that HCSL had to obtain commercial property insurance covering both its own interest and KEN Holdings's interest in the property. Through an independent insurance agency, Kapture,[1] HCSL applied for and obtained a policy from defendant Auto-Owners. The application for coverage identified KEN Holdings as a "loss payee" and "land contract holder." The policy issued thereafter included the Endorsement captioned "Loss Payable Provisions," which set forth the coverage to be afforded to parties other than the insured, HCSL, with an interest in the property. The Policy Declaration sheet listed KEN Holdings under "secured interested parties and/or additional interested parties" and as possessing a "loss payable" interest.

---

[1] Although Kapture is a defendant, it supports KEN Holdings's position in this appeal.

-1-

The policy was renewed annually. In 2009, the building was significantly damaged by fire. HCSL and KEN Holdings each filed claims with Auto-Owners for their resulting losses. Auto-Owners denied coverage to HCSL on the grounds that HCSL had engaged in misconduct, i.e. arson, and so was excluded from coverage by the terms of the policy.

Although Auto-Owners did not allege that KEN Holdings participated in any of HCSL's misconduct, it nevertheless denied coverage for KEN Holdings's losses. Auto-Owners took the position that under the relevant terms of the "Loss Payable Provisions" Endorsement, if HCSL's claim was denied due to misconduct, then KEN Holdings was not entitled to coverage either. KEN Holdings filed this suit asserting that under the terms of the "Loss Payable Provisions" Endorsement it had a right to coverage for its losses despite HCSL's misconduct and loss of coverage.

The trial court granted summary disposition to Auto-Owners finding that the policy was unambiguous and that HCSL's non-compliance voided coverage to KEN Holdings as well as itself. KEN Holdings appealed, and we reversed concluding that the policy application was incorporated into the policy and that the terms of the policy were ambiguous due to the repeated and various uses of the terms "loss payable" and "loss payee."[2] On remand, the trial court heard and considered testimony from competing experts in insurance, after which it again granted summary disposition to Auto-Owners finding that "the ambiguity has been resolved."

ANALYSIS

The question in this case requires us to interpret the "Loss Payable Provisions" Endorsement in the commercial insurance policy.[3] The Endorsement contains an introductory clause (Clause A), followed by three clauses (B, C, and D) each of which defines the nature of the coverage assigned to a particular class of interested party. In this case, the parties agree that the dispute is whether KEN Holdings's interests are covered by Clause B or Clause C and that Clause D does not apply. The parties further agree that if Clause B controls then the misconduct of HCSL bars coverage for KEN Holdings but that if Clause C controls then KEN Holdings is entitled to coverage despite HCSL's misconduct.

The endorsement reads in pertinent part:

> A. When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

---

[2] *KEN Holdings v Auto Owners Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued June 26, 2014 (Docket No. 312894), p 4-6.

[3] "[I]nsurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

## B. LOSS PAYABLE

For Covered Property in which both [the insured] and a Loss Payee shown in the Schedule or in the Declarations has an insurable interest, we will:

1. Adjust losses with [the insured]; and

2. Pay any claim for loss or damage jointly to [the insured] and the Loss Payee, as Interests may appear.

## C. LENDER'S LOSS PAYABLE

1. **The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgage holder or trustee, whose interest in Covered Property is established by such written instruments as:**

   a. Warehouse receipts;

   b. *A contract for deed;*

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both [the insured] and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. *If we deny [the insured's] claim because of [its] acts or because [it has] failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment* if the Loss Payee:

      (1) Pays any premium due under this Coverage Part at our request if [the insured has] failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of [the insured's] failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any loss or damage and deny payment to [the insured] because of [its] acts or because [it has] failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest; in this event, [the insured] will pay [its] remaining debt to us.

\* \* \*

**D. CONTRACT OF SALE**

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization [the insured has] entered a contract with for the sale of the property.

2. For Covererd Property in which both [the insured] and the Loss Payee have an insurable interest we will:

   a. Adjust losses with [the insured]; and

   b. Pay any claim for loss or damage jointly to [the insured] and the Loss Payee, as interests may appear; (Emphasis in italics added).


In sum, the Endorsement contains three "loss payable" provisions. Which one applies to a given interested party's loss is governed by the terms of those provisions. Clause C, entitled

"Lender's Loss Payable" applies, by its terms, where "[t]he Loss Payee shown in the schedule is a creditor including a mortgage holder or trustee as established by such written instrument as: [e.g. contract for deed, financing statements, or mortgages]." Clause D entitled "Contract for Sale" defines the coverage applicable to any person or entity with whom the insured has entered into a contract for sale of the property.[4] Clause B can apply to any interested party the nature of whose interest does not fall within either Clause C or Clause D.

Auto-Owners takes the position that because the Declaration sheet lists KEN Holdings as having a "loss payable" interest, it is covered by Clause B of the Endorsement, which is entitled "Loss Payable." In doing so, Auto-Owners overlooks the fact that the entire Endorsement, including Clauses C and D, are all under the overall heading "Loss Payable Provisions." Moreover, Clause C governing "Lender's Loss Payable" repeatedly refers to the covered lender as the "Loss Payee." Thus, to the degree this case was controlled by the meaning of the terms "loss payable" or "loss payee" we would, as we did in our prior opinion, remand the case for trial in light of the ambiguity.[5]

However, upon additional review of the text of the Endorsement and our previous findings, we conclude that resolving the ambiguity concerning these terms is not necessary to resolve this case. The focus on these terms stemmed from the Declaration Sheet's reference to "Interest: Loss Payable." This term cannot serve to determine which of the three clauses within the Endorsement applies. As noted in our prior opinion, the entire Endorsement is captioned "Loss Payable Provisions" and by its unambiguous terms lists and contains three "Provisions Applicable," i.e. Clauses B, C, and D, each of which refer to the interested party using the identical term "loss payee." There is no language in the Endorsement (or elsewhere in the policy) stating that only one of the three provisions is applicable or that prior to issuance of the Endorsement, the insured must select Clause B, C, or D as the one being contracted for.[6] Indeed,

---

[4] The parties agree that KEN Holdings does not fall within Clause D, which applies when the insured is selling the property to a third party, not purchasing it from a third party under a contract for deed.

[5] We disagree with the trial court that the additional testimony it considered "resolved the ambiguity." The linguistic ambiguity cannot be resolved on a motion for summary disposition by selecting one expert's interpretation of the ambiguity over another's. See *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997) (stating that if a contract is subject to two reasonable interpretations summary disposition is inappropriate). We did not remand the case for the trial court to "resolve" the linguistic ambiguity, but for the parties to further litigate the case based upon our finding that the term "loss payable" as used in the Endorsement and in the Declaration Sheet was ambiguous and so could not serve as the basis to determine which of the Endorsement's clauses is applicable.

[6] If there is an identified interested party whose interest is not within Clause C or Clause D, then their interest is covered by Clause B, which has no requirements other than the existence of some interest. Clause B functions as the catch-all for interested parties whose interests are not covered by Clause C or Clause D, but all the covered interested parties are termed "loss payees" in the Endorsement.

in its caption section the Endorsement states that all three forms of "Loss Payable Provisions" are the "Provisions Applicable." It does not select one as having already been determined the one that is "applicable." And, Auto-Owners concedes that whether the interested party is a mortgagee, a land contractee, or simply a joint owner, the same premium is charged and that there is no "rating" based on the nature of the interest held and so no danger of providing coverage beyond that provided for by the premium. If Auto-Owners had wished to separate the provisions of clauses B, C, and D into three separate endorsements from which the insured would pre-select, it could have done so. Instead, it sells all "Loss Payable Provisions" in a single self-contained endorsement.

Thus, the intent of the parties is clear. Auto-Owners intended to sell the entire Endorsement, and the insured intended to buy the entire Endorsement with coverage under all three clauses. There is no legal or other basis to now conclude that the Endorsement was sold in pieces, and any such conclusion would be completely inconsistent with the document's plain language.[7]

The controlling question is not what the parties intended at the time of purchase but rather which Clause, *by its terms*, applies to KEN Holdings. The question has already been answered in our prior opinion where we stated: "KEN Holdings clearly meets the criteria of Clause C of the loss payable provisions." *KEN Holdings v Auto Owners Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued June 26, 2014 (Docket No. 312894), p 5.

The plain language of the Endorsement provides for coverage to any identified interested party. Whether that interested party is then entitled to the extent of coverage defined by Clause C turns on whether that party factually meets the requirements of Clause C. The extent of coverage is based upon the nature of the interested party's status, and the policy does not require pre-selection of one Clause in the Endorsement. Here, no pre-selection was requested or required, and no pre-selection was made. The insured notified Auto-Owners that KEN Holdings was an interested party and requested and purchased the relevant endorsement. Under the terms of that Endorsement, KEN Holdings is entitled to coverage as defined in Clause C.

Because our ruling is based on the plain language of the policy, we need not reach the question of whether our prior ruling that the policy application should be considered incorporated into the policy constitutes law of the case. Similarly, we find no reason to consider the request to have the matter assigned to a different judge. Finally, we note that Auto-Owners

---

[7] Additionally, Auto-Owners's position that the notation "Interest: Loss Payable" on the Declarations Sheet determines the applicable provision and Clause in the Endorsement renders the subsections of Clauses C and D describing what loss payee they are applicable to, Clause C(1) and Clause D(1), surplusage and nugatory. If a notation on the Declarations Sheet determines the applicable Clause in the Endorsement, then there is no need for those Clauses to describe the type of "Loss Payee" they are applicable to. We must avoid an interpretation that renders part of a contract surplusage or nugatory. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

has conceded that KEN Holdings has met the coverage requirements set forth in Clause C(2)(c).[8] Accordingly, we remand the case to the trial court for entry of summary disposition to KEN Holdings as to coverage for their loss and for further proceedings to determine the amount of the covered loss. Appellant may tax costs as the prevailing party. MCR 7.219(A). We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Douglas B. Shapiro

---

[8] These requirements are that the Loss Payee: "(1) Pays any premium due under this Coverage Part at our request if [the insured has] failed to do so; (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of [the insured's] failure to do so; and (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee."