# STATE OF MICHIGAN

# COURT OF APPEALS

VHS HURON VALLEY SINAI HOSPITAL,
doing business as DMC SURGERY HOSPITAL,

Plaintiff-Appellee,

v

SENTINEL INSURANCE COMPANY,

Defendant-Appellant.

FOR PUBLICATION
January 23, 2018

No.  328005
Wayne Circuit Court
LC No.  14-009084-NF

ON REMAND

Before:  FORT HOOD, P.J., and GLEICHER and O'BRIEN, JJ.

GLEICHER, J. (*dissenting*).

A release is a contract.  We interpret contracts according to their plain and unambiguous terms.  We do not add or ignore words.  We disdain interpretative methodologies premised on "reasonableness."  "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*." *Rory v Cont'l Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005) (emphasis in original).

Given these well-settled rules, the majority's conclusion that the plain words of the parties' release do not mean what they say, and instead must be viewed against the backdrop of "the record and the procedural posture of this case as a whole," is nothing short of remarkable.  Contrary to *Rory* and every rule of contract interpretation, the majority has rewritten the parties' release.

This is not a hard case, and its resolution should be as simple as the rule set out in *Rory*.  Charles Herndon, Jr. sustained personal injuries in an accident with an uninsured vehicle.  Plaintiff Huron Valley, a hospital, provided Herndon with healthcare services related to the accident.  Herndon filed a first-party lawsuit against Sentinel seeking uninsured motorist (UIM) benefits, but failed to include in his lawsuit a claim for no-fault personal injury protection (PIP) benefits.  Herndon and Sentinel settled Herndon's UIM claim.  Huron Valley then sued Sentinel for payment of Herndon's medical expenses.  Sentinel contended that its liability for Herndon's medical expenses should have been litigated in Herndon's UIM case, and that res judicata barred the suit.  The circuit court denied Sentinel's summary disposition motion on this ground.  Sentinel and Huron Valley settled their dispute by entering into a release.  The parties agreed that

-1-

Sentinel would pay Huron Valley $61,712.18, plus costs and interest, "if Sentinel's position regarding res judicata/release is ultimately rejected by the Michigan Court of Appeals or Supreme Court."

At least two other paragraphs of the release addressed (and repeated) that the sole issue to be presented on appeal was "regarding *res judcata*/release." The 2015 release made no mention of Huron Valley's standing (or alleged lack thereof). Nor did the release reference a health care provider's statutory right to sue.

We decided Sentinel's appeal in Huron Valley's favor in October 2016. Not surprisingly, our decision focused exclusively on the doctrine of res judicata; after all, that was the only issue that the parties agreed to present to us. We held that because Huron Valley and Herndon were not in privity, res judicata did not apply. We did not consider Huron Valley's standing to sue, because the issue was never raised. We did not evaluate whether healthcare providers possess a statutory cause of action against insurers, because consistent with the release it signed, Sentinel argued only that Huron Valley's claim for PIP benefits could have been resolved in Herndon's UIM action, implicating res judicata principles. Displeased with our rejection of this argument, Sentinel applied for leave to appeal in the Supreme Court.

In May 2017, the Supreme Court decided *Covenant Med Ctr, Inc v State Farm Mut Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), holding that healthcare providers lack standing to maintain direct causes of action against insurers to recover PIP benefits. Sentinel now contends that despite the plain and unambiguous language of the release, it is not liable to Huron Valley because the hospital had no cause of action in the first place.

Sentinel's argument would be compelling, if it had made it in the trial court, or settled the underlying case with a release reserving that issue for appeal. Instead, Sentinel elected to sign a release that carved out for appeal only a single, specific and narrow question: whether the doctrine of res judicata barred Huron Valley's claim. In other words, Sentinel waived any argument that Huron Valley lacked standing. It deliberately elected to forgo this appellate claim. If Sentinel suspected that a standing argument had legal legs, it should have identified "standing" in the release as an issue to be presented to an appellate court.

Perhaps the release did not preserve a standing claim because the parties' bargain *required* Sentinel to waive the issue. Perhaps Sentinel's counsel calculated incorrectly that the Supreme Court would decide *Covenant* differently. We need not speculate, because our Supreme Court has forcefully and effectively instructed that if a contract's words are unambiguous, we look no further to ascertain the parties' intent. The words lend themselves to but one interpretation in this case: Sentinel agreed to appeal on res judicata grounds, and waived its potential standing argument.

The majority makes much of the fact that Sentinel raised the issue of standing in the trial court by including it as an affirmative defense. This proves my point: Sentinel knew an important legal issue existed that might entirely preclude Huron Valley's claim. Yet Sentinel deliberately decided to forego asserting a standing challenge when it signed a release plainly limiting its appeal to "res judicata." This is called a waiver.

The majority's reliance on the **absence** of language in the release "indicating that defendant intended to clearly and unequivocally waive its legal position with respect to plaintiff's standing" turns the law of contracts—and waiver—upside down. "[A]n unambiguous contract reflects the parties' intent as a matter of law." *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). In other words, the parties to a contract are bound by what they say, not by what they do not say. We do not rewrite unambiguous contracts by intuiting what a party really meant to say, or speculating about subjective intent. We do not bail out parties who forget to include a provision, or who make a bad prediction and elect to go in one direction rather than another. "Courts have long held parties to agreements they make, regardless of the harshness of the results." *Nexteer Auto Corp v Mando Am Corp*, 314 Mich App 391, 396; 886 NW2d 906 (2016).[1]

The majority ignores the law and repudiates the plain language of the release. Instead of holding Sentinel to the bargain it made, the majority tosses a lifeline, excusing Sentinel's waiver by hypothesizing that before the Supreme Court decided *Covenant*, Sentinel "may have reasonably surmised that any challenges to plaintiff's standing would have been rejected by the trial court and the appellate courts." This breathtaking and contrived exemption from the words of the contract suggests that because Sentinel reasonably expected that a standing argument would go nowhere, it could nevertheless preserve the claim without including it in the release. *Rory* forcefully condemns such reasoning: "When a court abrogates unambiguous contractual provisions based on its own independent assessment of 'reasonableness,' the court undermines the parties' freedom of contract." *Rory*, 473 Mich at 468-469. And although this Court has held

---

[1] The majority cites *Nexteer* as authority for its holding that a waiver of a right requires language reflecting a specific intent to waive the right. In *Nexteer*, 314 Mich App at 393, however, this Court upheld the validity of a stipulation stating: " '[a]n agreement to arbitrate this controversy . . . exists [but] is not applicable.' " (Alterations in original.) One party, Mando, changed its mind about arbitration, and sought to reassert the arbitration agreement. This Court held that the stipulation's language "that the arbitration provision 'was not applicable' " constituted an express and binding waiver. *Id.* at 395. We pointed out that:

> Mando was aware of the arbitration clause in the nondisclosure agreement, and it was aware of Nexteer's general allegations in its complaint. It had the ability to apply the language of the arbitration clause to the complaint in order to decide whether it should pursue arbitration. After stipulating that the arbitration provision did not apply, Mando may not now argue that the arbitration provision does in fact apply. [*Id.* at 397.]

*Nexteer* assuredly does not stand for the proposition that a waiver may be enlarged by reference to legal arguments not mentioned in the waiver. The majority's groundbreaking proposition that stipulated waiver language may be interpreted to mean more than it says contravenes *Nexteer*, *Rory*, and countless other cases. That is why publication is required under MCR 7.215(B)(3) ("A court opinion must be published if it . . . alters, modifies, or reverse an existing rule of law.").

that *Covenant* applies retroactively to cases awaiting review in which the issue was raised, this Court has never extended the retroactivity rule to embrace cases that have been *settled*.

Sentinel made a choice. It settled the claims brought by Huron Valley. As part and parcel of that settlement, Sentinel agreed in writing to limit its appeal to an argument regarding res judicata, thereby foregoing any and all other legal claims. Having made its bed, Sentinel must lie in it. Any other result violates bedrock principles of contract law and flies in the face of decades of contract jurisprudence. I would hold that based on the clear and unambiguous language of the release, Sentinel's *Covenant* argument comes too late, and respectfully dissent.

/s/ Elizabeth L. Gleicher