STATE OF MICHIGAN

 COURT OF APPEALS

TRUCKING SPECIALISTS, INC. d/b/a TKMS, UNPUBLISHED
LTD., and LOU’S TRANSPORT, INC., November 25, 2014

 Plaintiffs-Appellants,

v No. 316641
 Oakland Circuit Court
INLAND LAKES LANDSCAPING LC No. 2012-127989-CK
CORPORATION, ROGER CANTELON, and RLI
INSURANCE COMPANY,

 Defendants-Appellees.

Before: HOEKSTRA, P.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

 Plaintiffs appeal as of right from the circuit court’s order granting defendants’ motion for
summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

 I

 This case arises out of the parties’ conflicting interpretations of a contract to haul and
dispose of sediment dredged from Quarton Lake in Birmingham, Michigan. In 2011, defendant
Inland Lakes Landscaping Corporation (“Inland”) entered into a contract with the City of
Birmingham (the “Main Contract”) to haul and dispose of sediment dredged from Quarton Lake.
Inland entered into a subcontract with plaintiff Lou’s Transport, Inc. (“Lou’s”) to haul and
dispose of the dredged sediment at a price of $17.50 per cubic yard, and plaintiff Trucking
Specialists, Inc. d/b/a TKMS, Ltd. (“TKMS”) provided the trucking services for Lou’s.
Defendant Roger Cantelon personally guaranteed payment to TKMS through an individual
personal guaranty, and defendant RLI Insurance Company was the surety under a payment bond.

 Regarding payment for “[t]he proposed dredging,” § 36 of the Main Contract provided as
follows: “Payment shall be made by cubic yards removed with the quantity to be determined by
a post dredging survey of the cross sections in the plans, on-site inspections, and haul/disposal
tickets. It is assumed that dredging materials are 50% water by volume.” Regarding payment
for “trucking dewatered dredge spoils to a . . . landfill and disposal in said landfill,” § 37 of the
Main Contract provided that “[t]he cubic yard price paid will be based on the amount of material
transported, not number of truck yards. This will be determined by on-site inspections and load
tickets.” The subcontract incorporated the terms of the Main Contract, and Inland agreed to pay
 -1-
“$17.50 per Cubic Yard.” (Emphasis omitted.) The subcontract further provided that
“[p]ayment will be made according to the actual Cubic Yards of Material that are disposed of.”
(Emphasis omitted.)

 In 2012, between April 2 and 11, plaintiffs hauled away 43 truckloads of material. In
determining plaintiffs’ pay, Inland calculated the cubic yards of the material hauled by
multiplying its weight by its density. According to Inland, weight tickets showed that plaintiffs
hauled material weighing a total of 1,138.8 tons. In determining the density of the material,
Inland relied on a soil density test, performed on April 2, 2012, by engineering consultants as the
dredged material was being placed into the trucks. The engineers’ report explained that the test
“was accomplished by placing the soils in one of [the engineers’] standard compaction molds,
and providing a small amount of mechanical compaction to simulate a backhoe dumping the
materials into a truck box.” As a result, the engineers estimated that the dredged material had a
low-end volume of 0.919 cubic yards. Thus, Inland determined that plaintiffs hauled a total of
1,047 cubic yards of material (1,138.8 tons x 0.919 cubic yards per ton, rounded up), and paid
them at the contractual rate of $17.50 per cubic yard for a total of $18,322.50.

 Plaintiffs claimed that each of the 43 truckloads contained 40 cubic yards of material, as
evidenced by TKMS’s invoices and load and time tickets, as well as weight tickets from Veolia
Environmental Services, the disposal facility. Accordingly, plaintiffs claimed that they were
entitled to payment for 1,720 cubic yards of material (43 x 40), plus a 3% fuel surcharge, for a
total of $30,525.70. Plaintiffs filed their complaint, alleging that they were entitled to payment
as a result of a breach of contract, a violation of the Michigan Builders Trust Fund Act, MCL
570.151 et seq., a breach of the personal guaranty, and the payment bond.

 Defendants moved for summary disposition under MCR 2.116(C)(10) on plaintiffs’
claims for breach of contract, breach of the personal guaranty, and payment under the bond, and
for summary disposition under MCR 2.116(C)(8) on plaintiffs’ claim under the Builders Trust
Fund Act. Plaintiffs agreed that their claim under the Builders Trust Fund Act should be
dismissed. Otherwise, plaintiffs argued that they were entitled to summary disposition under
MCR 2.116(I)(2) because the invoices, load and time tickets, and weight tickets showed that they
hauled 43 truckloads of material at 40 cubic yards each, for a total of 1,720 cubic yards. Further,
plaintiffs argued that defendants’ calculation of cubic yardage based on the post-dredging survey
was impermissible under the Main Contract. According to plaintiffs, a post-dredging survey
could be used to calculate the payment owed for dredging the lake under § 36 of the Main
Contract, but payment for hauling and disposing of dredged material under § 37 was to be
determined solely by on-site inspections and load tickets.

 In their reply brief, defendants argued that the load and time tickets relied upon by
plaintiffs were signed by defendants’ independent contractors, who were not authorized to act on
behalf of defendants. Further, defendants argued that the soil density testing was an on-site
inspection because it tested the material on-site before it was loaded into plaintiffs’ trucks.
Defendants also argued that the weight tickets plaintiffs attached to their response brief were not
actually weight tickets, and only established the origin, truck size, and time and date for each of

 -2-
the loads. Defendants asserted that the weight tickets attached to its reply brief measured the
actual weight of the truck loads, specifying the difference between the gross weight of the truck
when fully loaded and the tare1 weight upon being emptied, and demonstrated that plaintiffs
hauled a total net weight of 1,138.8 tons. The weight tickets also showed that that truck loads
each carried varying degrees of weight, ranging from roughly 45,000 to 69,000 pounds.

 The circuit court granted defendants’ motion following a hearing, holding that it agreed
with defendants’ interpretation of the contracts. Specifically, the circuit court found that the
calculation method through which plaintiffs sought payment, a calculation of the amount of
material hauled based on the number of truck yards, was expressly prohibited by the Main
Contract, and that the soil density test, from which defendants calculated payment, constituted an
on-site inspection as permitted under § 37 of the Main Contract.

 II

 This Court reviews de novo matters of contract interpretation and a decision to grant or
deny a motion for summary disposition. Klapp v United Ins Group Agency, 468 Mich 459, 463;
663 NW2d 447 (2003). Summary disposition under MCR 2.116(C)(10) is appropriate when,
considering “the evidence and all legitimate inferences in the light most favorable to the
nonmoving party,” Coblentz v Novi, 475 Mich 558, 567-568; 719 NW2d 73 (2006), “there is no
genuine issue as to any material fact, and the moving party is entitled to judgment or partial
judgment as a matter of law,” MCR 2.116(C)(10). In presenting a motion for summary
disposition, the moving party has the initial burden of supporting its position with evidence,
Smith v Globe Life Ins Co, 460 Mich 446, 455; 597 NW2d 28 (1999), and then the burden shifts
to the opposing party to establish a genuine issue of material fact, id.; MCR 2.116(G)(4).

 “The primary goal in the construction or interpretation of any contract is to honor the
intent of the parties.” Klapp, 468 Mich at 473 (citation and quotation marks omitted).
“[U]nambiguous contracts . . . are to be enforced as written unless a contractual provision
violates law or public policy,” Rory v Continental Ins Co, 473 Mich 457, 491; 703 NW2d 23
(2005), because “an unambiguous contract reflects the parties’ intent as a matter of law,” In re
Smith Trust, 480 Mich 19, 24; 745 NW2d 754 (2008).

 Plaintiffs first argue that the circuit court erred by permitting defendants to calculate their
payment based on the engineers’ estimated volume (0.919 cubic yards) calculated from the soil-
density test. Plaintiffs maintain that the soil-density test was a “dredging survey” under § 36 of
the Main Contract, which discusses payment for dredging services, instead of an “on-site
inspection[]” or “load ticket[]” under § 37, which discusses the payment for hauling and

1
 “The weight of a container . . . that is deducted from the gross weight to obtain net weight.”
The American Heritage Dictionary of the English Language (1996).

 -3-
disposing of dredged material applicable here.2 Plaintiffs claim that post-dredging surveys could
only be used to calculate payment in § 36. But the circuit court found that the soil-density test
was an on-site inspection, and according to the plain language of the Main Contract, an on-site
inspection could be used to calculate payments under either § 36 or § 37. The circuit court
correctly reasoned that the soil-density test was an on-site inspection because its calculation of
the volume of dredged material was conducted on site as it was being loaded into plaintiffs’
trucks.

 Next, plaintiffs argue that the circuit court erred by permitting defendants to calculate
their payment with the mass of the dredged material reported in the weight tickets. Again,
plaintiffs note that, under § 37, the parties intended to calculate the amount of material hauled for
their payments with “on-site inspections and load tickets.” Plaintiffs argue the use of weight
tickets was not contemplated by the parties in that section of the Main Contract. We disagree.
Although the plain language of § 37 provided for the use of on-site inspections and load tickets
to calculate the amount of material transported, it only expressly excluded the use of truck yards
in making that calculation. As discussed above, defendants’ use of the combination of on-site
inspections and weight tickets to calculate the amount of material transported was not expressly
excluded by § 37. See Grinnell Bros v Brown, 205 Mich 134, 137; 171 NW399 (1919)
(“expression of one thing is the exclusion of another”). Moreover, as the circuit court found,
defendants’ use of the weight tickets provided the actual weight of the dredged material, thereby
permitting a calculation of the “actual” number of cubic yards of material under the plain
language of the subcontract.

 In contrast, plaintiffs sought to rebut defendants’ calculation of the amount of material
transported by providing a calculation that relied on the number of truck yards, a calculation
method which was expressly precluded in § 37. The circuit court properly rejected plaintiffs’
calculation on this basis.

 In addition, plaintiffs’ calculation did not accurately evidence the “actual” amount of
cubic yards of material. The weight of each of the 43 truckloads varied from truckload to
truckload. But plaintiffs’ calculation inaccurately used the same 40-cubic yard weight for each
of its 43 truckloads, totaling 1,720 cubic yards. In other words, the evidence indicates that each
truckload would not have carried the exact same weight, and as such, the load tickets did not
accurately evidence the actual amount of cubic yards hauled. As the circuit court properly
concluded, plaintiffs attempted to base the amount of material transported on the capacity of the
trucks, which was expressly prohibited under § 37, rather than the actual amount of material,

2
 Again, regarding payment for “[t]he proposed dredging,” § 36 of the Main Contract provided,
“Payment shall be made by cubic yards removed with the quantity to be determined by a post
dredging survey of the cross sections in the plans, on-site inspections, and haul/disposal tickets.
It is assumed that dredging materials are 50% water by volume.” And regarding hauling and
disposal, § 37 of the Main Contract provided that “[t]he cubic yard price paid will be based on
the amount of material transported, not number of truck yards. This will be determined by on-
site inspections and load tickets.”

 -4-
which was required by the subcontract. Notably, plaintiffs offered no other evidence challenging
the veracity of defendants’ calculation, nor did they create a question of fact by providing an
alternate basis to calculate the actual cubic yardage hauled.3 MCR 2.116(G)(4).

 In sum, the circuit court was presented with two alternative means of determining
whether plaintiffs had been properly paid for their hauling and disposal services. Defendants’
proposed calculation relied on on-site inspections, which were expressly authorized by the
parties’ Main Contract, and weight tickets, which were not expressly precluded and aided in the
calculation of the “actual” amount of cubic yards under the subcontract, whereas plaintiffs’
proposed calculation relied on the number of truck yards, which were expressly precluded, and
did not reflect the “actual” amount of material hauled. Because the subcontract unambiguously
expressed the general intent that plaintiffs would be paid for the actual amount of material
hauled, we conclude that the circuit court properly considered the only relevant and admissible
evidence in the record regarding that amount, and that plaintiffs failed to demonstrate a genuine
issue of material fact to rebut that amount under MCR 2.116(C)(10).

 Affirmed. Defendants, as prevailing parties, may tax costs pursuant to MCR 7.219.

 /s/ Joel P. Hoekstra
 /s/ Kurtis T. Wilder
 /s/ Karen M. Fort Hood

3
 In their reply brief on appeal, plaintiffs argue that defendants’ calculations failed to recognize
that the dredged material increased in volume after it was dredged and mixed with air. Because
this argument was first raised in a reply brief, this Court need not consider it. Bronson Methodist
Hosp v Mich Assigned Claims Facility, 298 Mich App 192, 199; 826 NW2d 197 (2012). In any
event, the engineers’ report states that two samples of “dredged soils” were taken, suggesting
that the density was measured after the material was dredged and mixed with air.

 -5-