# STATE OF MICHIGAN

# COURT OF APPEALS

KERRY WHELAN-THIELEKE and GREG
THIELEKE,

        Plaintiffs-Counter Defendants,

v

PAT O'BRIEN AND ASSOCIATES, LLC,

        Defendant-Cross Defendant,

and

SHERYL E. STEPHENS,

        Defendant/Counter Plaintiff/Cross
        Plaintiff-Appellee,

and

JULIE MORAITIS, LEE MORAITIS,
ANASTASIA LEONARD, KENNETH
LEONARD, and DAPHNE MORAITIS

        Defendants/Counter Plaintiffs/Cross
        Defendants-Appellants,

UNPUBLISHED
January 13, 2015

No. 318260
Charlevoix Circuit Court
LC No. 12-099923-CH

Before: TALBOT, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

In this real property dispute, appellants Julie Moraitis, Lee Moraitis, Anastasia Leonard, Kenneth Leonard, and Daphne Moraitis (collectively the Moraitises) appeal by right the trial court's order granting summary disposition in favor of appellee Sheryl Stephens under MCR 2.116(C)(10). For the reasons more fully explained below, we conclude the trial court erred when it granted summary disposition in favor of Stephens; instead, given the undisputed facts, the trial court should have granted summary disposition in favor of the Moraitises. Accordingly, we reverse and remand for entry of an order denying Stephens' motion and granting summary disposition in favor of the Moraitises.

-1-

## I.  BASIC FACTS

In October 2011, the Moraitises and Stephens executed a purchase agreement in which Stephens agreed to buy the property in issue from the Moraitises for $1,225,000, provided that Stephens met certain conditions.  One of the conditions required Stephens to obtain financing for the purchase of the home:

> Payment of the full purchase price upon execution and delivery of Warranty Deed, contingent upon Buyer's ability to obtain, at Buyer's expense a **Conventional** mortgage loan in the amount of 80%.  Buyer agrees to make application for said loan within ____ business days of the effective date of the Agreement, and to obtain and furnish to Seller evidence of conditional loan commitment within ____ business days of the effective date of this agreement.  Buyer shall furnish Seller with **unconditional loan commitment** no later than (Date) ____.  [Emphases in original.]

The parties also agreed that the purchase was subject to Stephens' ability to sell her existing home:

> 19.  SPECIAL CONDITIONS OF SALE (if any):  This agreement is subject to the sale and close of Buyers [sic] home . . . .  The seller may continue to market the property for sale.  If another offer is made that is acceptable to the Seller's [sic] than the Seller's [sic] shall then notify the Buyers in writing of the second accepted agreement giving the Buyers 5 days to remove all contingencies and proceed towards closing.  If the Buyers are unable to do so, the first accepted agreement would be considered null and void, and the earnest money deposit shall be returned in full.

The parties agreed to extend the purchase agreement for 60 days in February 2012 and for another 60 days on April 12, 2012.  On April 27, 2012, plaintiffs Kerry Whelan-Thieleke and Greg Thieleke (collectively the Thielekes), offered to purchase the property from the Moraitises for $1,285,000.

On May 3, 2012, Stephens' agent sent an e-mail to the Moraitises' agent purporting to waive Stephens' right to sell her existing home: "Here is the Waiver of Contingency for the contingency for Mrs. Stephens to sell her home.  She is moving forward to secure her financing."  The attached waiver was on the realtor's letterhead and read:

> I (We) the undersigned parties to that certain Purchase Agreement dated: 10/17/11 . . . do hereby remove the contingency(ies) concerning that which is indicated on the Purchase Agreement: An acceptable offer has been made on the above mentioned property, and per the five day first right of refusal, the buyers

acknowledge in writing that they have until May 5, 2012 to remove the contingency of the sale of their home . . . .[1]

The next day, Stephens provided the Moraitises with a letter from Raymond James Financial indicating that she had been pre-qualified for a mortgage loan, subject to certain conditions. Stephens received a conditional acceptance letter from Raymond James Financial on May 11, 2012 that listed several conditions that Stephens would have to satisfy in order to receive the loan.

The Thielekes eventually sued for specific performance, naming the Moraitises and Stephens, as well as the Moraitises' broker, Pat O'Brian and Associates, as defendants. Stephens answered the complaint and filed a cross-claim against the Moraitises.

In July 2012, Stephens' lawyer sent an e-mail to the Moraitises' lawyer stating that Stephens would be willing to purchase the property for $1,285,000: "This offer is not meant to waive any claim that my client may [have] against your clients but is to be considered an offer to settle this presently pending case, and as much, may not be admissible as evidence." The Thielekes' lawyer sent an e-mail to the Moraitises' lawyer in which they stated that they would pay $1,400,000 for the property. The Moraitises accepted the Thielekes' offer. Thereafter, the Thielekes settled their claim with Stephens, and the Moraitises settled their claim with their agent. The Thielekes and the Moraitises also entered into a stipulated order of dismissal, and the trial court dismissed the Thielekes' claims against the Moraitises with prejudice. The only claim remaining after that was Stephens' claim against the Moraitises.

Stephens then moved for summary disposition, which the trial court granted.

This appeal followed.

## II. SUMMARY DISPOSITION

## A. STANDARDS OF REVIEW

On appeal, the Moraitises contend that the trial court erred when it granted summary disposition in favor of Stephens. Given the undisputed evidence, they maintain, the trial court should have granted summary disposition in their favor. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). We also review de novo the trial court's interpretation of a contract. *Klapp v United InsGroup Acency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

## B. ANALYSIS

---

[1] The parties dispute who filled in the last sentence of the waiver.

Here, the issue is whether the trial court properly determined that there was no factual dispute that Stephens satisfied the requirements under the purchase agreement. Specifically, whether she obtained the necessary financing and effectively waived the condition of the sale of her existing home within five days of the Thielekes' offer.

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Barnard Mfg*, 285 Mich App at 369. The moving party has the initial burden to identify the issues about which he or she believes there is no factual dispute and to support that assertion with evidence. *Id.* at 369-370. If the moving party properly supports his or her motion, the burden shifts to the party opposing the motion " 'to establish that a genuine issue of disputed fact exists.' " *Id.* at 370, quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

"A contract must be interpreted according to its plain and ordinary meaning." *Alpha Capital Mgt Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010). "The initial question whether contract language is ambiguous is a question of law." *Port Huron Ed Ass'n MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW 228 (1996). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written . . . ." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). If there are two reasonable interpretations of a contract, factual development is necessary and summary disposition is inappropriate. *Port Huron Ed Ass'n*, 452 Mich at 323.

Stephens argued that the purchase agreement only required her to show that she had the "ability to obtain" financing and that the note and mortgage pre-qualification letter established that she met this requirement. The Moraitises counter that the purchase agreement plainly required Stephens to obtain an *unconditional* loan commitment before they had any obligation to transfer the property and that her failure to obtain an unconditional commitment within the required time terminated the purchase agreement.

In relevant part, the purchase agreement provided that the Moraitises could continue to market the property to third parties and, if they received an acceptable offer, had to notify Stephens in writing. Stephens then had 5 days to remove all contingencies and proceed to closing. In addition, the parties agreed that Stephens had to provide the Moraitises with an unconditional loan commitment. The word "commitment" refers to the "the state of being committed," which in context means the state of being bound or obligated. See *Random House College Dictionary* (1997). A commitment is "unconditional" if it is "not limited by conditions." *Id.* The parties chose not to fill in the specific dates by which Stephens was required to complete the specific financing steps. But, notwithstanding that, the purchase agreement plainly requires Stephens to furnish the Moraitises with an unconditional loan commitment at some point in time. Moreover, the purchase agreement cannot reasonably be understood to provide that Stephens can satisfy this condition after its expiration; once the purchase agreement expired, none of the parties would have any rights or obligations under it. Because this requirement is unambiguous, we must enforce it. *In re Smith Trust*, 480 Mich at 24. Consequently, in order to prevail, Stephens had to present evidence that she obtained an unconditional loan commitment before the expiration of the purchase agreement.

The parties extended the purchase agreement twice, but it is undisputed that the purchase agreement expired on June 11, 2012. There is no evidence in the record that Stephens *ever* obtained an unconditional loan commitment—let alone that she provided the Moraitises with an unconditional loan commitment before the expiration of the purchase agreement. The mortgage pre-qualification and the conditional acceptance were not "unconditional loan commitments" because both expressly stated that Raymond James was not bound or obligated to provide financing. Therefore, under the undisputed evidence, Stephens had no rights under the purchase agreement because she did not obtain an absolute loan commitment before her rights under the purchase agreement expired.

## C. CONCLUSION

The trial court erred when it granted Stephens' motion for summary disposition; it should have granted summary disposition in favor of the Moraitises. Given our resolution of this issue, we decline to consider any other issues on appeal.

Reversed and remand for entry of an order denying Stephens' motion for summary disposition and granting summary disposition in favor of the Moraitises. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

-5-