# STATE OF MICHIGAN

# COURT OF APPEALS

ANTHONY ROBERTS,

Plaintiff-Appellant,

v

HBPO NORTH AMERICA, INC.,

Defendant-Appellee.

UNPUBLISHED
November 8, 2016

No. 329325
Oakland Circuit Court
LC No. 2015-147367-CL

Before: STEPHENS, P.J., and SAAD and METER, JJ.

PER CURIAM.

In this breach of contract action, plaintiff appeals of right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(8) and dismissing plaintiff's complaint. We affirm.

## I. BACKGROUND

Plaintiff was employed by defendant as its Director of Operations. Defendant, at its discretion, provided a bonus system for its employees, under which a "variable component" of an employee's "overall salary" was "individually calculated and based on financial results and individual performance." Under the bonus policy, plaintiff was required to meet or exceed certain metrics and personal and organizational targets established by defendant in order to qualify for a bonus. The bonus policy also included the following eligibility requirement, which is at issue in this case:

> You must be an active employee at the time of the bonus payout to be eligible to receive a bonus. HBPO will NOT pay a bonus to employees who have left the Company on their own free will.

During 2014, plaintiff allegedly met and exceeded his targets and earned a bonus under the system in the amount of $68,084. Plaintiff's bonus was to be paid on April 30, 2015, in accordance with the bonus policy, specifying that the bonus will be paid on or about the last day of April. On April 22, 2015, eight days before the bonus payout date, defendant terminated plaintiff's employment following an investigation regarding his alleged violation of company policy. Defendant did not pay plaintiff the 2014 bonus, after which plaintiff instituted this breach of contract action against defendant.

-1-

In lieu of filing an answer to plaintiff's complaint, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted). Defendant argued that, under the policy's clear and unambiguous language, an employee's eligibility to receive a bonus is predicated on his employment with the company at the time of the bonus payout, and thus, plaintiff, who admitted that his employment was terminated before the payout date, is clearly ineligible to receive a bonus, making summary dismissal of his breach of contract claim appropriate. Plaintiff opposed the motion, arguing that the eligibility provision is ambiguous and its meaning must be resolved by a jury, making summary disposition inappropriate. Plaintiff relied on the second sentence of the eligibility provision—"HBPO will NOT pay a bonus to employees who have left the Company on their own free will"—and interpreted the provision as precluding employees who are not employed with the Company at the time of the bonus payout from receiving a bonus, but only if those employees *voluntarily* left defendant's employ before the bonus payout. Thus, plaintiff argued, where an employee, such as himself, is *involuntarily* terminated before the bonus payout, the requirement of active employment at the time of the bonus payout does not apply, and thus, he remains entitled to receive a bonus, even though he was not an active employee at the time of the payout. Otherwise, according to plaintiff, the second sentence of the provision, pertaining to voluntary terminations is meaningless, rendering that language surplusage. The trial court found the language of the policy to be unambiguous and granted summary disposition in favor of defendant and dismissed plaintiff's claim.

## II. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Id.* at 119. "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id.* "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.'" *Id.*, quoting *Wade v Dep't of Corrections*, 439 Mich 158, 162; 483 NW2d 26 (1992). "When deciding a motion brought under this section, a court considers only the pleadings."[1] *Maiden*, 461 Mich at 119, citing MCR 2.116(G)(5).

"[W]hether contract language is ambiguous is a question of law that [this Court] review[s] de novo." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003), citing *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999). Further, "the proper interpretation of a contract is also a question of law that [this Court] review[s] de novo." *Klapp*, 468 Mich at 463, citing *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). "In interpreting a contract, it is a court's obligation to

---

[1] In a contract-based action, a contract attached to the pleadings is considered part of the pleadings. See MCR 2.113(F)(1),(2); *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003).

determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008), citing *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 112; 595 NW2d 832 (1999). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Smith Trust*, 480 Mich at 24, citing *Frankenmuth Mut Ins*, 460 Mich at 111. On the other hand, "the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp*, 468 Mich at 469 (citation omitted). In interpreting a contract, "courts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Id.* at 468 (citation and quotation marks omitted). Further, "contract terms should not be considered in isolation and contracts are to be interpreted to avoid absurd or unreasonable conditions and results." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 297; 778 NW2d 275 (2009). This Court "cannot read words into the plain language of a contract." *Northline Excavating, Inc v Livingston Co*, 302 Mich App 621, 628; 839 NW2d 693 (2013).

A contract "'is ambiguous when its provisions are capable of conflicting interpretations.'" *Klapp*, 468 Mich at 467, quoting *Farm Bureau*, 460 Mich at 566; see also *Stone v Williamson*, 482 Mich 144, 150-151; 753 NW2d 106 (2008) (stating that ambiguity exists where language is "equally susceptible to more than a single meaning.") Additionally, the language of a contract is ambiguous where "there is no way to read the provisions of th[e] contract in reasonable harmony." *Klapp*, 468 Mich at 468-469. On the other hand, contract terms are not ambiguous where there is only one reasonable interpretation of the terms when considered in accordance with their commonly used meanings and in context. *Hastings*, 286 Mich App at 297.

## III. ANALYSIS

Applying the rules of contract construction, we find that the trial court did not err in deciding that the eligibility provision at issue was clear and unambiguous and properly construed the provision in defendant's favor as a matter of law. *Smith Trust*, 480 Mich at 24. We agree with defendant that the provision is not reasonably capable of two competing interpretations. *Klapp*, 468 at 467. Instead, it plainly and unequivocally states that plaintiff "must be an active employee at the time of the bonus payout to be eligible to receive a bonus." This unambiguous language evidences the parties' clear intent to require an employee to be actively employed at the time of the bonus payout. *Smith Trust*, 490 Mich at 24 ("[A]n unambiguous contract reflects the parties' intent.").

We disagree with plaintiff's argument that the second sentence, stating that defendant will not pay bonuses "to employees who have left the Company on their own free will," creates ambiguity. Both sentences at issue are plain and unambiguous and clearly do not "irreconcilably conflict." *Klapp*, 468 Mich at 467. Instead, when read in context, we find the unambiguous language of the second sentence to be complimentary to, and not conflicting with, the requirement that an employee must be employed at the time of the bonus payout to be eligible to receive a bonus. The second sentence simply reiterates or emphasizes that an employee who voluntarily leaves the company before the payout date will not receive a bonus. Thus, contrary

to plaintiff's assertion, the two sentences can be read together to reach a harmonious result and do not render the second sentence meaningless or superfluous. *Klapp*, 468 Mich at 468-469.

Moreover, plaintiff's interpretation does not comport with the provision's clear and unambiguous language. Although the second sentence clearly pertains to voluntary terminations, it does not contain any language to reasonably suggest an intent to limit, narrow, or modify the scope of the policy's requirement of continued employment at the time of the bonus payout to apply only to those employees who *voluntarily* terminate their employment before the payout and not to those employees, such as plaintiff, who are *involuntarily* terminated before the payout. In the absence of any such language, there is no basis to impose a limitation on the scope of the eligibility requirement as plaintiff suggests. Plaintiff's interpretation, thus, requires us to impermissibly read limiting language into the policy that does not exist. Courts "cannot read words into the plain language of a contract," *Northline Excavating*, 302 Mich App at 628, and we must interpret and enforce the clear and unambiguous terms of the policy as written, *Smith Trust*, 480 Mich at 24, which requires active employment at the time of the bonus payout to be eligible to receive a bonus.

We conclude that the policy language, being clear and unambiguous, reflects the parties' intent and must be enforced as written. *Smith Trust*, 480 Mich at 24. That language explicitly precludes employees who are not actively employed on the date of the bonus payout from being eligible to receive a bonus. Although plaintiff argues this result is harsh, resulting in a loss of the 2014 bonus he allegedly earned, courts must honor the policy's clear and unambiguous language.[2] See MCL 408.471(e); MCL 408.473 (providing that under Michigan law, fringe benefits, including a bonus, shall be paid "in accordance with the terms set forth in the written contract or policy.")

Thus, as a matter of law, plaintiff's breach of contract claim fails and the trial court did not err in granting summary disposition under MCR 2.116(C)(8) in defendant's favor.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Henry William Saad
/s/ Patrick M. Meter

---

[2] We also note that the bonus plan is discretionary and defendant expressly reserved the right to modify or terminate the plan with or without notice.